IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MATTHEW ALLEN BARKSDALE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:18-CV-082-Y |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**<u>OPINION AND ORDER</u>**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Matthew Allen Barksdale, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I.  FACTUAL AND PROCEDURAL HISTORY**

Petitioner was indicted in Erath County, Texas, Case No. CR13859, for aggravated sexual assault of [L.G.], a child younger than 14 years of age. (Clerk's R. 4, doc. 16-13.) On May 13, 2013, following a jury trial, the jury found Petitioner guilty of the offense and, the next day, assessed his punishment at 99 years' imprisonment. (Id. at 36.) Petitioner appealed his conviction, but the state appellate court affirmed the trial court's judgment and

the Texas Court of Criminal Appeals refused his petition for discretionary review. (Docket Sheet 2, doc. 16-2.) Petitioner also filed a post-conviction state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order. (SHR 3-19 & Action Taken, docs. 16-29 & 16-27, respectively.[1])

The state appellate court summarized the facts of the case as follows:

> C.C. is the mother of three children, including the victim in this case, four year-old [L.G.]. [Petitioner] is not [L.G.]'s biological father. C.C. met [Petitioner] in 2008 while working at a McDonald's restaurant in Brownwood, and the two developed a romantic relationship. [Petitioner] and C.C., along with [L.G.] and another child the couple had together, K.B., began living together in a home in Stephenville in July 2012. [Petitioner] was the only father figure that [L.G.] had known, and she referred to him as "Daddy." On the night of August 31, 2012, [Petitioner] and C.C. left for work at a cleaning service and returned home around 2:45 a.m. C.C.'s father watched the children while C.C. and [Petitioner] were at work.
>
> [Petitioner] and C.C. went to bed around 4:00 a.m. on September 1. C.C. was awakened during the night by K.B.'s crying. C.C. picked up K.B. from her bed in another room and brought her back into bed with her and [Petitioner] in the master bedroom. C.C. awoke again around 9:00 a.m. and discovered that [Petitioner] was no longer in bed with her. C.C. walked down the hallway and found [Petitioner] lying in bed with [L.G.] [Petitioner] woke up and returned to the master bedroom where he fell back asleep.
>
> While eating breakfast that morning, [L.G.] told C.C. that "Daddy did the tee-tee thing." C.C. asked

---

[1]"SHR" refers to the record of Petitioner's state habeas proceeding in WR-86,974-01.

2

[L.G.] what she meant, and [L.G.] stated that [Petitioner] spit in his hand and then rubbed it on her "tee-tee." C.C. then attempted to call a clinic, which was closed, and then called her father. C.C. then woke [Petitioner] and confronted him about what [L.G.] had told her. [Petitioner] denied that anything had happened and began crying.

C.C. took her daughters into the master bedroom and asked [L.G.] once more what had happened. [L.G.] repeated that "Daddy did the tee-tee thing," meaning that he spit in his hand and rubbed it on her "tee-tee." She then told her mother that he touched her "tee-tee" with his hand and with his "thing." Upon further inquiry by her mother, [L.G.] described her father's "thing" as "the thing that has all the hair on it." [L.G.] then demonstrated to C.C. that she was lying in bed in the fetal position when [Petitioner] then pulled down her pants and underwear. C.C. asked [L.G.], "[D]id he stick his finger or his thing inside of you?" [L.G.] replied that he did not. [L.G.] continued and said that "he had touched her tee-tee with his fingers and with his thing—rubbed his thing on her tee-tee." Following this conversation, C.C. took [L.G.] to the local hospital.

At the hospital, C.C. was told that they first needed to see the police. After going to the police station, C.C. next took [L.G.] to Cook Children's Hospital in Fort Worth. The C.A.R.E. team at Cook Children's Hospital interviewed [L.G.]. Following the interview, [L.G.] underwent a physical examination.

Detective Orlando Gaitan subsequently interviewed [Petitioner] about the sexual assault. Detective Gaitan recorded this interview. [Petitioner] initially denied that any sexual assault had taken place. However, he later acknowledged that he "fingered" [L.G.], apparently referring to digital penetration. In this regard, Detective Gaitan testified that [Petitioner] confessed to penetrating [L.G.]'s vagina. [Petitioner]'s trial counsel objected to Detective Gaitan's testimony on the grounds that it was hearsay and that the recording would constitute "the best evidence of what he said." The trial court overruled [Petitioner]'s objection. Detective Gaitan further testified that [Petitioner] specifically stated that "he had penetrated [L.G.]'s vagina with his finger." [Petitioner]'s recorded statement was subsequently entered into evidence by the State without

3

objection from [Petitioner].

(Mem. Op. 2-3, doc. 16-4.)

## II. ISSUES

Petitioner raises the following two grounds for relief:

(1) the evidence was legally and factually insufficient to support his conviction; and

(2) his trial counsel rendered constitutionally deficient assistance.

(Pet. 6, doc. 1.)

## III. RULE 5 STATEMENT

Respondent believes that Petitioner failed to exhaust his state-court remedies as to one or more of his ineffective-assistance-of-counsel claims but does not otherwise assert that the petition is untimely or successive. (Resp't's Answer 6, doc. 15.)

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state

4

court. *See* 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption of correctness applies to both express and implied findings of fact. *Valdez v. Cockrell,* 274 F.3d 941, 948 (5th Cir. 2001).

When the Texas Court of Criminal Appeals denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court may infer fact findings consistent with the state court's disposition and assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Schartzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez,* 274 F.3d at 948 n.11; *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). A

petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

## V. DISCUSSION

### A. Sufficiency of the Evidence

Under his first ground, Petitioner claims that the evidence was legally and factually insufficient to prove the element of penetration. (Pet. 6, 11-13, doc. 1.) Petitioner raised this claim on appeal, but the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

Petitioner challenged both the legal and factual sufficiency of the evidence on appeal; however, in light of the Texas Court of Criminal Appeals's holding in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), the appellate court analyzed Petitioner's insufficiency claim under only the familiar legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). (Mem.

6

Op. 4, doc. 16-4.) Likewise, for purposes of federal habeas-corpus review, a state conviction need only satisfy the *Jackson v. Virginia* legal-sufficiency standard. *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005).

Federal habeas review of a legal sufficiency claim is extremely limited. The required inquiry in a legal-sufficiency analysis is only that a reviewing court determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319. This standard applies to both direct and circumstantial evidence. *Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir. 1990). In conducting a *Jackson* review, a federal habeas court may not substitute its view of the evidence for that of the factfinder, but must consider all of the evidence in the light most favorable to the prosecution, with all reasonable inferences to be made in support of the jury's verdict. *United States v. Moser*, 123 F.3d 813, 819 (5th C ir. 1997); *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). Where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

Based on the evidence adduced at trial, the state appellate court, applying the *Jackson* standard, addressed the issue as

7

follows:

> We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*. Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination.
>
> We note at the outset that [Petitioner] bases his sufficiency challenge on the premise that we are not to consider the testimony from Detective Gaitan that [Petitioner] admitted to penetration or [Petitioner]'s own recorded statement to this same effect because these items of evidence were not properly admitted into evidence. This is a faulty premise. As noted previously, we consider all of the evidence in the record when conducting a sufficiency review, whether it was admissible or inadmissible. Accordingly, we consider these items of evidence in conducting our sufficiency review.
>
> A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly, by any means, causes the penetration of the sexual organ of a child. The State may prove penetration by circumstantial evidence, and the victim need not specifically testify that there was penetration. Contact that is "more intrusive than contact with [the victim's] outer vaginal lips" amounts to penetration sufficient to sustain a conviction for aggravated sexual assault.
>
> [Petitioner] points out that much of the evidence, including the testimony of C.C., suggests that no penetration occurred. C.C. testified, "[A]nd then I asked her, well, did he stick -- did he penetrate you, and when

> I -- and how I said that to her was, did he stick his finger or his thing inside of you, and she said, no, she said, he did not." The prosecution then asked, "Did you use the word 'penetrate' or did you use 'stick it inside you'?" C.C. replied, "I said inside her tee-tee." The prosecution again asked, "So you never used the word 'penetrate'?" C.C. replied, "No, no."
>
> [Petitioner] also points out that Rebecca Sullivan, a pediatric nurse practitioner who spoke with and examined [L.G.], never indicated that [Petitioner] penetrated [L.G.]'s sexual organ with his finger. However, Sullivan's testimony is inconclusive as to whether penetration occurred. She stated that it is possible that penetration or manipulation of the vulva could have occurred without causing pain or sensitivity to [L.G.].
>
> Despite C.C.'s and Sullivan's testimony, there still existed evidence of penetration. In the video recording of his police interview, [Petitioner] confessed that he consciously "fingered" [L.G.]. He additionally provided details concerning her body position at the time, noted that she awoke when it happened, and stated that she did not say anything to him when it happened. Additionally, Detective Gaitan testified that [Petitioner] admitted "[t]hat he had penetrated her vagina with his finger." Under the applicable standard of review, we must presume that the jury resolved any conflicts in the testimony in favor of the verdict. After reviewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the element of penetration beyond a reasonable doubt.
>
> . . .

(Mem. Op. 4-7, doc. 16-4 (citations omitted).)

Petitioner's claim that the evidence is insufficient rests primarily on his contention that his confession was inadmissible for noncompliance with article 38.22 of the Texas Code of Criminal Procedure ("When statements may be used"). TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2017). However, the state appellate court

9

determined that his statement did not stem from custodial interrogation, and, thus, the warnings required by article 38.22 were not required in Petitioner's case. (Mem. Op. 9-11, doc. 16-4.) Nevertheless, as the state court pointed out, even erroneously admitted evidence is considered in a sufficiency review. *See United States v. Miller,* 146 F.3d 274, 280 (5th Cir. 1998). And, it was the jury's role to resolve any conflicts or inconsistencies in the evidence. *See United States v. Barksdale-Contreras,* 972 F.2d 111, 114 (5th Cir. 1992). Accordingly, considering all the evidence adduced at Petitioner's trial in the light most favorable to the jury's verdict, a rational jury could have concluded that Petitioner penetrated [L.G.]'s vagina with his finger. Petitioner's confession that he "fingered" [L.G.], alone, infers penetration. Thus, the state court's application of *Jackson* was not unreasonable.

**B. Ineffective Assistance of Counsel**

Under his second ground, Petitioner claims that he received ineffective assistance of trial counsel. (Pet. 6, 14-16, doc. 1.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for

10

counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner claims his trial counsel was ineffective by failing to–

11

(a) subject the state's case to any meaningful adversarial testing;
(b) quash the indictment because the evidence was contrary to the alleged criminal activity;
(c) contest the designation of the state's outcry witness because her statement did not comport with Texas Code of Criminal Procedure article 38.071;
(d) request a "reliability hearing" for the outcry witness's statement;
(e) request a Texas Rule of Evidence 403 balancing test for "noncharged alleged extraneous offense evidence" from the outcry witness;
(f) object and request a mistrial for each instance of prosecutorial misconduct which included statements calculated to inflame the minds of the jurors, "contaminating rationality";
(g) provide an expert witness to refute the onslaught of the state's witnesses;
(h) suppress petitioner's statement to the police for noncompliance with Texas Code of Criminal Procedure article 38.22;
(i) request a *Jackson v. Denno* hearing to determine the voluntariness of his statement to police "due to police manipulation";
(j) make a hearsay objection regarding Rebecca Sullivan's testimony about [L.G.]'s self-reported medical history "as some testimony contained uncharged extraneous acts";
(k) make a proper Texas Rule of Evidence 404(b) objection regarding all alleged extraneous offenses; and
(l) request a hearing pursuant to Texas Code of Criminal Procedure article 38.37 to determine the admissibility of alleged extraneous-offense evidence.

(Pet. 6, 14-16, doc. 1.)

As a preliminary matter, Respondent asserts that Petitioner's claims (b) and (d) through (j) are unexhausted and procedurally barred because they were not raised in state court. (Resp't's Answer 6-11, doc. 15.)

State prisoners seeking habeas-corpus relief under § 2254 are

required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented in a procedurally proper manner to the highest court of the state on direct appeal or in state post-conviction habeas proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The exhaustion requirement is "not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Reed v. Stephens,* 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003)).

In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may typically satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state post-conviction habeas-corpus application. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Petitioner raised one or more of his ineffective-assistance claims on appeal in appellant's brief but did not reassert the

13

claims in his petition for discretionary review. (Appellant's Br. 2, doc. 16-7; Pet. for Discretionary Review, doc. 16-11.) Petitioner also raised one or more of his ineffective-assistance-of-counsel claims in his state habeas application, in addition to a plethora of tangential claims in his memorandum in support of the application. (SHR 8-12, 32-38, doc. 16-29.) Petitioner directs the Court to various pages in his supporting memorandum at which he asserts that one or more of the tangential claims were raised for exhaustion purposes. (Pet'r's Resp. 1-2, doc. 19.) However, fleeting references to an issue in a supporting memorandum is not sufficient to alert the state court of the factual and legal basis for a claim. *See Phelan v. Quarterman,* No. 4:06-CV-122-Y, 2006 WL 3392183, at *2 (N.D.Tex. Nov. 21, 2006). Consequently, his claims properly raised in his state habeas application sufficiently correspond with claims (a), (c), (k), and (l) raised in this petition. The remaining claims and the claims raised for the first time in this federal petition are unexhausted for purposes of § 2254(b)(1)(A).

Under the Texas abuse-of-the-writ doctrine, however, Petitioner cannot now return to state court for purposes of exhausting the claims. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a)-(c). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of

14

cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the claims are unexhausted and procedurally barred from this Court's review. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman v. Thompson,* 501 U.S. 722, 750 (2000). As such, the following discussion addresses only claims (a), (c), (k), and (l).

The state habeas court conducted a hearing by affidavit, and, to the extent raised in Petitioner's state habeas application, trial counsel Andrew Ottaway, an experienced criminal defense attorney, responded to the allegations as follows (all spelling, grammatical, and/or punctuation errors are in the original):

> I was appointed to represent [Petitioner]. This was a penetration case, with the penetration alleged to have been made with [Petitioner]'s finger.
>
> There was a considerable amount of evidence against him, but one factor we had to work with in the case was that he was a victim of sexual abuse as a child. I thought this might mitigate his punishment. He had a pleasant, good manner of speaking, and I thought he would make a good witness in his own defense. We hoped to get a lesser included charge on indecency with a child or some other offense which would make him eligible for probation. I explored the possibility of getting an expert witness to testify that child victims of sexual abuse are more likely to offend as adults but the literature did not support that line of defense.
>
> He had given a videotaped confession. I did not file a motion to suppress the confession, because at the time the statement was given [Petitioner] was not under arrest. He gave his statement, then he was allowed to leave the Sheriffs Office. He was not in custody at the time of the statement. The statement was not made during a custodial interrogation.
>
> Pretrial, the Trial Court made a determination that

> the mother of the child was the proper outcry witness.
>
> At the trial, the State introduced evidence to support the allegations in the indictment, including DNA evidence. [Petitioner] testified at the punishment phase. The mother of the child also testified in the punishment phase on behalf of the defendant, asking for leniency.
>
> Post-trial, interviews of jurors indicated that the testimony of the mother was not helpful, perhaps costing [Petitioner] any chance of a reduced punishment based on sympathy as a child victim of sexual assault himself.

(SHR 50-51, doc. 16-29.)

Based on counsel's affidavit and the documentary record, the state habeas judge, who also presided at Petitioner's trial, entered express findings that there were no unresolved material facts requiring a hearing and that Petitioner's application lacked any legal or factual merit and concluded that relief should be denied. (Id. at 52.) In turn, the Texas Court of Criminal Appeals denied the application without written order. To the extent more particularized findings were not made by the state court as to petitioner's claims, this Court will infer fact findings consistent with the state courts' disposition and, absent any evidence that incorrect standards were applied, assume that the state courts applied the *Strickland* standard to Petitioner's claims. Thus, deferring to the state courts' implied factual findings, and having independently reviewed Petitioner's claims in conjunction with the state-court records, the state courts' application of *Strickland* was not objectively unreasonable.

Petitioner has not demonstrated deficient performance or shown

16

any reasonable probability that the outcome of his trial would have been different but for counsel's alleged deficiencies. A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically motivated and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner has presented no evidentiary, factual, or legal basis in this federal habeas action that could allow the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. *See* 28 U.S.C. § 2254(d). Petitioner's claims are largely conclusory, with no factual or legal basis; refuted by the record; involve strategic and tactical decisions made by counsel; involve state evidentiary rulings or other matters of state law; or would have required counsel to make frivolous or futile motions or objections, all of which generally do not entitle a state petitioner to federal habeas relief. *See Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (reinforcing that "federal habeas corpus relief does not lie for errors of state law"); *Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Kessler v. Dretke,* 137 Fed. App'x 710, 2005 WL 1515483, at *1 (5th Cir. June 28,

2005), *cert. denied,* 546 U.S. 1105 (2006) (providing under state law "evidence of extraneous evidence is more often admissible in cases involving sexual assaults of children, notwithstanding Texas's normal rules of evidence"); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (providing counsel is not required to make futile motions or frivolous objections); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1992) (providing "[e]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such").

**VI. Conclusion**

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may issue "only if the [Petitioner] has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When the district court denies the petition on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack,* 529 U.S. at 484). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of Petitioner's constitutional claims and/or procedural rulings. Therefore, a certificate of appealability should not issue.

SIGNED October 10, 2018.

                                            _____
                                            TERRY R. MEANS
                                            UNITED STATES DISTRICT JUDGE